| | |
|---|---|
| **CITY OF EAST ST. LOUIS,**<br>**Individually and on behalf of all others**<br>**similarly situated,** ) ) ) ) | |
| **Plaintiff,** ) | **Case No. 3:21-CV-561-MAB[1]** |
| ) | |
| **vs.** ) ) | |
| **NETFLIX, INC.,**<br>**DISNEY PLATFORM DISTRIBUTION,**<br>**INC., APPLE, INC., HULU, INC.,**<br>**WARNERMEDIA DIRECT, LLC,**<br>**AMAZON.COM SERVICES, LLC,**<br>**CBS INTERACTIVE, INC.,**<br>**YOUTUBE, LLC,**<br>**CURIOSITYSTREAM, INC.,**<br>**PEACOCK TV, LLC,**<br>**DIRECTV, LLC, and**<br>**DISH NETWORK, LLC,** ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the Motions to Dismiss filed by each

of the Defendants (Docs. 172, 173, 174, 176, 178). Plaintiff filed an omnibus response in

opposition to the motions to dismiss (Doc. 184), and each Defendant filed a reply brief

(Docs. 187, 188, 189, 190, 191). Defendants also requested leave to file supplemental

authority in support of their motions to dismiss (Docs. 197, 200), which the Court granted

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to
28 U.S.C. §636(c) (*see* Doc.150).

over Plaintiff's opposition (Doc. 205; *see also* Doc. 199, 204).

Although Defendants requested oral argument on the motions to dismiss, the Court has reviewed the papers submitted and determined that oral argument is not necessary. For the reasons that follow, Defendants' motions to dismiss are granted.

### BACKGROUND

In Illinois, all persons or entities "seeking to provide cable service or video service" are required to obtain authorization from the government to provide their services. *E.g.*, 220 ILL. COMP. STAT. 5/21-301(a). Such authorization is commonly referred to as a "franchise." In the past, providers had to obtain authorization from each individual municipality. *See* Illinois Senate Bill 678, Bill for an Act Concerning Telecommunications, 95th General Assembly, House Proceedings, May 31, 2007, at 234 (statement of Rep. Brosnahan).[2] But since 2007, when Illinois enacted the Cable and Video Competition Law (220 ILL. COMP. STAT. 5/21-100, *et. seq*) (the "CVCL"), providers can now obtain a single state-wide authorization from the Illinois Commerce Commission. 220 ILL. COMP. STAT. 5/21-301(a).[3]

The CVCL defines "video service" to include "video programming . . . that is provided through wireline facilities located at least in part in the public rights-of-way

---

[2] Available on Westlaw at IL H.R. Tran. 2007 Reg. Sess. No. 65.

[3] Providers also still have the option of obtaining a cable television franchise from each individual municipality and/or county. *E.g.*, 220 ILL. COMP. STAT. 5/21-301(a) (citing Illinois Municipal Code, 65 ILL. COMP. STAT. 5/11-42-11, and Counties Code, 55 ILL. COMP. STAT. 5/5-1095). *See also* 220 ILL. COMP. STAT. 5/21-401(a)(2) ("Nothing in this Section shall prohibit a local unit of government from granting a permit to a person or entity for the use of the public rights-of-way to install or construct facilities to provide cable service or video service, at its sole discretion.").

without regard to delivery technology, including internet protocol technology. 220 Ill. Comp. Stat. 5/21-201(v). But it expressly excludes from the "video service" definition "video programming provided by a commercial mobile service provider . . . or any video programming provided solely as part of, and via, service that enables users to access content, information, electronic mail, or other services offered over the public internet." *Id.* If an entity's services fall within the definition, it must obtain a State-issued authorization from the Illinois Commerce Commission before it can "use the public rights-of-way for the installation or construction of facilities for the provision of cable service or video service or offer cable service or video service . . . ." *Id.* at 401(a), (b).

The CVCL imposes numerous requirements on "holders," that is entities who are granted state-wide authorizations to offer or provide cable or video service. *See* 220 Ill. Comp. Stat. 5/21-601, 701, 801, 901, 1001, 1101. *See also id.* at 201(k) (defining "holder). Most notably, holders are required to pay a service provider fee to all local units of government within whose boundaries the holders offer cable or video service. *Id.* at 801(b).[4] To that end, before offering cable service or video service within the jurisdiction of a local unit of government, a holder is required to notify the local unit of government. *Id.* at 801(a). The local unit of government is then required to adopt an ordinance imposing the service provider fee. *Id.* at 801(b).

The instant case involves the CVCL's application to the twelve Defendants, who are all "over the top" video service providers that charge subscribers a fee to access and

---

[4] A "local unit of government" is defined by the CVCL as "a city, village, incorporated town, or county." 220 Ill. Comp. Stat. 5/21-201(o).

stream their programming over the Internet (Doc. 167, ¶¶5–17, 30, 33; Doc. 184, p. 16 n.1). To watch Defendants' video content, subscribers use their own internet-connected device (such as smart televisions, streaming media players like Roku or Apple TV, tablets, smartphones, personal computers, etc.) (Doc. 167, ¶37). And subscribers connect to the internet through the internet service provider ("ISP") of their choice (*Id.* at ¶52). Defendants' subscribers typically use a broadband internet connection, such as DSL or fiber optic cable, to view Defendants' video content (*Id.* at ¶48). A broadband connection relies on the ISPs' wireline facilities located in whole or in part in the public right(s)-of-way (*Id.* at ¶¶36, 50). In other words, Defendants' video content is delivered from their servers to subscribers' devices through third-party ISPs' wireline facilities located in the public rights-of-way. Defendants do not provide internet access, nor do they own, control, or operate wireline facilities in any Illinois public right-of-way (*Id.* at ¶¶52, 60).

The City of East St. Louis, Illinois ("Plaintiff") brought this putative class action against Defendants on behalf of all Illinois cities, villages, incorporated towns, and counties in which one or more of the Defendants provide video service (Doc. 1, Doc. 167). Plaintiff alleges that Defendants have all engaged in ongoing violations of the Illinois CVCL by providing video service using the public rights-of-way without first obtaining authorization from the Illinois Commerce Commission and without paying the requisite fees to municipalities (Counts 1 and 2). Plaintiff also asserts claims for trespass (Count 3),

unjust enrichment (Count 4), and violation of East St. Louis Municipal Ordinance §82-19 (Count 5) (Doc. 167).[5]

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) addresses the legal sufficiency of the plaintiff's claim for relief, not the merits of the case or whether the plaintiff will ultimately prevail. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss, a complaint must contain sufficient factual matter to plausibly suggest that the plaintiff has a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *Iqbal*, 556 U.S. at 678. *See also Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 512–13 (7th Cir. 2020) ("[L]egal conclusions and conclusory allegations . . . are not entitled

---

[5] This Court also presided over a substantially similar putative class action filed by the Village of Shiloh, Illinois. *See Village of Shiloh v. Netflix, Inc., et. al.*, SDIL Case No. 21-cv-807-MAB. That case was removed here from the Circuit Court of St. Clair County, Illinois; it was originally filed five days after East St. Louis filed the instant case. The Village of Shiloh timely moved to remand its case, claiming that under comity principles, the case should be decided by an Illinois state court. *See id.* at Docs. 45, 46; *City of Fishers, Indiana v. DIRECTV*, 5 F.4th 750, 752–53 (7th Cir. 2021). In other words, the Village of Shiloh contended a state court, not a federal court, needed to answer the same questions that East St. Louis chose to submit to a federal forum. Ultimately, the Court chose to rule on the comity issue in *Village of Shiloh* rather than consider options for managing duplicative cases (*e.g.*, consolidation, stay, or dismissal) because comity abstention was the *only* issue formally before the Court—neither side had filed a motion regarding the management of the two cases nor provided any authority indicating that case management decisions should trump comity abstention principles—and the case was remanded. SDIL Case No 21-cv-807-MAB, Doc. 68, pp. 12–15. The Court recognized, however, the remand created an unusual and non-ideal situation in which duplicative lawsuits were proceeding in state and federal court and thus suggested any party could ask for a stay in either case. *Id.* No party asked the Court to stay the instant case, but they did ask for and were granted a stay in state court in *Village of Shiloh*, thus volleying the issues back to federal court. *See* SDIL Case No. 21-cv-807-MAB, Doc. 77. Accordingly, the undersigned is now tasked with determining whether Plaintiff has stated a claim for relief under Illinois law.

to this presumption of truth.") (citation omitted). In deciding whether the complaint sufficiently states a claim, courts take well-pleaded allegations in the complaint as true and draw all permissible inferences in favor of the plaintiff. *E.g., Dix*, 978 F.3d at 512–13. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

## DISCUSSION

### A. COUNTS 1 & 2 FOR VIOLATIONS OF THE ILLINOIS CVCL

Plaintiff alleges that Defendants violated the CVCL by failing to obtain a State-issued authorization for their video service, failing to provide notice to municipalities prior to providing video service, and failing to pay municipalities the required video service provider fees (Doc. 167, ¶¶80–97).

Defendants offer a myriad of independent reasons as to why Counts 1 and 2 should be dismissed. For example, Defendants argue the CVCL does not apply to them because they are not facilities-based providers and do not have any physical infrastructure (e.g., poles, wires and cables buried underground, utility boxes, etc.) in the public rights-of-way. They argue they are excluded from the CVCL under the public internet exemption. They argue the CVCL is preempted by various statutes, conflicts with Orders from the Federal Communications Commission, and that its application would violate the Internet Tax Freedom Act, the United States Constitution, the Illinois Constitution. The Court, however, need not reach any of those arguments because it finds another threshold argument is dispositive: the CVCL does not provide Plaintiff with a

right of action (Doc. 173, pp. 4–12; Doc. 179, pp. 39–43).

Under Illinois law, a party can file suit for violation of a statute only if the statute provides a right of action. *See Medicos Pain & Surgical Specialists, S.C. v. Travelers Indem. Co. of Am.*, 103 N.E.3d 965, 972 (Ill. App. Ct. 2018); *Midwest Med. Recs. Ass'n, Inc. v. Brown*, 97 N.E.3d 125, 136 (Ill. App. Ct. 2018) (citing *Gassman v. Clerk of the Cir. Ct. of Cook Cnty.*, 71 N.E.3d 783, 790 (Ill. App. Ct. 2017). "A statute may provide for an express right of action to redress a violation of its provisions." *1541 N. Bosworth Condo. Ass'n v. Hanna Architects, Inc.*, ---N.E.3d---, 2021 WL 6135459, *5 (Ill. App. Ct. 2021), *appeal denied*, 187 N.E.3d 704 (Ill. 2022). When a statute does not expressly provide for a private right of action, a court can consider whether an implied right of action exists. *Id.*

Determining whether the CVCL provides a right of action is an issue of first impression, which means the Court must interpret the statute as it thinks the Illinois Supreme Court would interpret it. *Frye v. Auto-Owners Ins. Co.*, 845 F.3d 782, 786 (7th Cir. 2017); *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012). As a federal court interpreting Illinois law, the Court must apply Illinois' rules of statutory construction. *In re Hernandez*, 918 F.3d 563, 569 (7th Cir. 2019) (citation omitted). "The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature[.]" *In re Hernandez*, 918 F.3d at 569 (citing *People v. Donoho*, 788 N.E.2d 707, 715 (Ill. 2003)). "The best evidence of legislative intent is the statutory language," which must be given its plain and ordinary meaning. *Donoho*, 788 N.E.2d at 715; *Haage v. Zavala*, 183 N.E.3d 830, 842 (Ill. 2021). When construing statutory language, the statute must be viewed in its entirety; words and phrases must be interpreted in light of other relevant

provisions of the statute and must not be construed in isolation. *Eighner v. Tiernan*, 184 N.E.3d 194, 199 (Ill. 2021); *Hubble v. Bi-State Dev. Agency of Illinois-Missouri Metro. Dist.*, 938 N.E.2d 483, 489 (Ill. 2010). In addition to the language of the statute, the court, in determining legislative intent, may also consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Hubble*, 938 N.E.2d at 489. In construing a statute, courts presume that the General Assembly did not intend absurdity, inconvenience, or injustice. *Michigan Ave. Nat'l Bank v. Cnty. of Cook,* 732 N.E.2d 528, 535 (Ill. 2000).

### 1. Express Right of Action

Defendants argue the CVCL does not provide an express cause of action (*e.g.,* Doc. 173, pp. 4–12; Doc. 179, pp. 39–41), while Plaintiff contends that it does (Doc. 184, pp. 39–40). The dispute centers on the language of §1301 of the CVCL (*see* Doc. 167, ¶29; Doc. 184, p. 39). This section is titled "Enforcement; penalties," and it initially provides that, "The Attorney General is responsible for administering and ensuring holders' compliance with [the CVCL], provided that nothing in [the CVCL] shall deprive local units of government of the right to enforce applicable rights and obligations." 220 ILL. COMP. STAT. 5/21-1301(a). Section 1301 then goes on to delineate the authority the Attorney General has and the actions the Attorney General can take in enforcing the CVCL, including "conduct[ing] an investigation regarding possible violations by holders" of the CVCL; "bring[ing] an action in a court of competent jurisdiction in the name of the People of the State" if a violation of the CVCL is identified; and seeking monetary penalties in an action against a holder. 220 ILL. COMP. STAT. 5/21-1301(b), (c), (d), and (e).

Section 1301 clearly provides an express right of action to the Attorney General by explicitly stating that the Attorney General may institute a lawsuit against holders for violations of the CVCL. 220 ILL. COMP. STAT. 5/21-1301(c). Notably, §1301 does not state that local units of government may do the same. *See id.* In fact, §1301 does not affirmatively delegate any sort of power or authority to local units of government when it comes to enforcing the CVCL. *See id.* It merely says that the CVCL does not "deprive local units of government of the right to enforce applicable rights and obligations." *Id.* at 1301(a). This is the language that Plaintiff gloms on to. Plaintiff says this language means that it can bring a lawsuit to enforce "the rights and obligations [that] are spelled out in the CVCL" (Doc. 184, p. 40; *see also id.* at p. 17). But Plaintiff's argument is refuted by reading section §1301 in its entirety and in the context of the CVCL as a whole.

To begin with, when the General Assembly intends to create a right of action, it certainly knows how to do so. This concept is illustrated by another section of the CVCL, specifically §401, which provides in part that, "[a] local unit of government or the Attorney General may seek to bar a transfer of ownership by filing suit in a court of competent jurisdiction . . . ." 220 ILL. COMP. STAT. 5/21-401(f). In other words, §401 provides local units of government with a limited right of action to challenge certain transfers of state-wide authorizations. Similarly, a portion of the Cable and Video Customer Protection Law—which was enacted at the same time as the CVCL and works in tandem with the CVCL[6]—provides that "[t]he Attorney General and the local unit of

---

[6] In June 2007, the General Assembly enacted Public Act 95-9, which, amongst other things, amended the Public Utilities Act by adding the Cable and Video Competition Law ("the CVCL") (codified at 220 ILL.

government may enforce all of the customer service and privacy protection standards of this Section with respect to complaints received from residents within the local unit of government's jurisdiction . . . ." 220 ILL. COMP. STAT. 5/22-501(r). These two statutes demonstrate that when the legislature intended to create a right of action for local units of government, it knew how to do so unequivocally and unmistakably. *See Conaghan v. City of Harvard*, 60 N.E.3d 987, 1002 (Ill. App. Ct. 2016) ("When the legislature intended to create a new cause of action, it knew how to do so without leaving any doubt as to its purpose.").

In contrast, §1301 does not contain any language expressly authorizing a local government to bring suits like the instant action for purported violations of the CVCL. Rather, §1301 makes clear that enforcement is to be left to the Attorney General. "The familiar maxim *expressio unius est exclusio alterius* is an aid of statutory interpretation meaning 'the expression of one thing is the exclusion of another.'" *Metzger v. DaRosa*, 805 N.E.2d 1165, 1172 (Ill. 2004) (citing Black's Law Dictionary 581 (6th ed. 1990)). "It expresses the learning of common experience that when people say one thing they do not mean something else." *Metzger*, 805 N.E2d at 1172. The fact that §1301 gives the Attorney General an express right of action does not imply that local governments can also bring suit under that section. Similarly, just because local governments are authorized to bring suit under §401 of the CVCL does not imply they can bring suit to enforce other sections

---

COMP. STAT. 5/21-100, *et seq.*(2007)), and the Cable and Video Customer Protection Law (codified at 220 ILL. COMP. STAT. 13-507.1, *et seq.* (2007) (current version at 220 ILL. COMP. STAT. 5/22-501, *et seq.*))). S.B. 678, 95th Gen. Assemb., Reg. Sess. (Ill. 2007); Ill. P.A. 95-9, art. 15, §§ 15-5, 15-25 (2007).

of the CVCL. *See Metzger*, 805 N.E2d at 1172 ("Where, as here, the legislature has expressly provided a private right of action in a specific section of the statute, we believe the legislature did not intend to imply private rights of action to enforce other sections of the same statute."). If the legislature intended as much, it would have explicitly said so in clear and unambiguous terms. *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1204 (Ill. 2019) ("When the statutory language is plain and unambiguous, we may not depart from the law's terms by reading into it exceptions, limitations, or conditions the legislature did not express, nor may we add provisions not found in the law.").

As Defendants point out, the language of §1301 regarding the right of local governments "to enforce applicable rights and obligations" is best understood as preserving the existing rights a local government may have (such as contract rights under a preexisting authorization) and the rights expressly provided for in the CVCL (such as the right to bring suit to contest certain transfers of ownership under §401(f)) (Doc. 173, p. 6; Doc. 179, p. 40). Simply put, there is no language in §1301 (or anywhere else in the CVCL) that expressly authorizes a local government to bring suits like the instant action for purported violations of the CVCL.

It also bears mentioning that §1301 only-authorizes suits against "holders," *see* 220 ILL. COMP. STAT. 5/21-1301, meaning persons or entities that have "received authorization to offer or provide cable or video service from the Commission pursuant to Section 21-401 of [the CVCL]." *Id.* at § 201(k). As the complaint makes clear, Defendants in this action are *not* holders (*e.g.*, Doc. 167, ¶83). No provision of the CVCL expressly authorizes anyone—not the Attorney General nor a local government—to bring suit against a "non-

holder" (Doc. 179, p. 28–30). The statute did not contemplate suits such as the instant case to compel video service providers who are–non-holders to apply for a state-wide authorization under the CVCL or to comply with the CVCL's requirements.

In sum, the CVCL does not provide an express right of action to Plaintiff to bring this lawsuit.

## 2. Home Rule Authority

Plaintiff also makes a perfunctory, undeveloped argument that it has the right to bring suit because, as a home rule municipality, it may "concurrently exercise those same powers as the State, provided that the State has not *specifically* declared the State's exercise to be exclusive," and in this instance, the CVCL does not explicitly declare that the State's ability to enforce compliance of the CVCL is exclusive (Doc. 184, p. 40). Plaintiff does not develop its argument any further or provide any supporting authority (*see id.*), which is enough in and of itself to reject Plaintiff's contention.[7]

Plaintiff's position also seems to involve a misapplication of the home rule concept. Home rule authority allows local governments "to legislate on a broad range of social and economic policies without prior state legislative approval." Paul A. Diller, *The*

---

[7] *E.g., Bank of Am., N.A. v. Veluchamy,* 643 F.3d 185, 190 (7th Cir. 2011) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citation omitted); *United States v. Courtright,* 632 F.3d 363, 370 (7th Cir. 2011) ("[Courts] are not in the business of formulating arguments for the parties."); *Mahaffey v. Ramos,* 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."); *White Eagle Coop. Ass'n v. Conner,* 553 F.3d 467, 476 n. 6 (7th Cir.2009) ("[I]t is not the province of the courts to complete litigants' thoughts for them . . . ."); *Tyler v. Runyon,* 70 F.3d 458, 465 (7th Cir.1995) ("[I]f an appellant fails to make a minimally complete and comprehensible argument for each of his claims, he [or she] loses regardless of the merits of those claims as they might have appeared on a fuller presentation.").

*City and the Private Right of Action*, 64 STAN. L. REV. 1109, 1100 (2012). *See also City of Chicago v. Roman*, 705 N.E.2d 81, 88 (Ill. 1998) ("The grant of home rule powers contemplates that different communities which perceive a problem differently may adopt different measures to address the problem, provided that the legislature has taken no affirmative steps to circumscribe the measures that may be taken and that the measures taken are reasonable.") (citation omitted). The Illinois Constitution authorizes home rule units to "exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. art. VII, § 6(a).[8] It further permits home rule units to "exercise and perform concurrently with the State any power or function of a home-rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." *Id.* at § 6(i).

As these Constitutional provisions imply, a local government typically exercises its home rule authority by *regulating*, meaning enacting ordinances related to its own local affairs. Sarah Swan, *Home Rules*, 64 DUKE L.J. 823 (2015). In this instance, as Defendants pointed out, there is no ordinance or other apparent exercise of home rule authority (Doc. 187, p. 3). Rather, the CVCL authorized the Attorney General to bring suit and Plaintiff is claiming that home rule authority allows it to step into the Attorney General's shoes and

---

[8] *See also* Jim Webb, *Does This Home Rule the Courts? Carbondale's Tort Reform Ordinance*, 30 S. ILL. U. L.J. 123, 125 (2005).

file the lawsuit. In other words, a municipality can take over a specific duty statutorily delegated to a state-level official in instances where the state-level official has not yet acted or has declined to act. However, Plaintiff has not pointed the Court to any authority or illustrative examples demonstrating that home rule authority works in the manner it is claiming (*see* Doc. 184).

Plaintiff's reliance on home rule authority also appears to have other fatal flaws that were not brought up by Defendants. First, home rule authority relates only to local affairs and not those of the state,[9] but the CVCL explicitly states that "[t]he provision of competitive cable services and video services is a matter of statewide concern that extends beyond the boundaries of individual local units of government.") 220 Ill. Comp. Stat. 5/21-101(e). The CVCL also appears to limit the ability of local governments to act because it explicitly states that "[t]he provision of [the CVCL] are a limitation of home rule powers under subsection (i) of Section 6 of Article VII of the Illinois Constitution." 220 Ill. Comp. Stat. 5/21-1401.

For these reasons, Plaintiff has failed to establish that it has a right of action to bring this lawsuit based on home rule authority.

### 3. Implied Right of Action

The lack of explicit statutory language granting local units of government the right

---

[9] *People ex rel. Bernardi v. City of Highland Park* 520 N.E.2d 316, 321 (Ill. 1988) ("The limited grant of power to home rule units in section 6(a) legitimizes only those assertions of authority that address problems faced by the regulating home rule unit, not those faced by the State or Federal governments."); *Wilson v. City of Chicago*, 900 F. Supp. 1015, 1024 (N.D. Ill. 1995), *aff'd*, 120 F.3d 681 (7th Cir. 1997) (citing *Ampersand Inc. v. Finley*, 338 N.E.2d 15, 18 (Ill. 1975)) ("Powers of a home rule unit relate only to its own affairs, not those of the state.").

to bring suit to enforce the CVCL is not necessarily dispositive because a court may determine that a private right of action is implied in a statute. *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1117 (Ill. 1999). Under Illinois law, courts will recognize an implied right of action only if all four of the following criteria are met: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for statutory violations. *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019) (citing *Fisher*, 722 N.E.2d at 117).

Here, the Court opts to move directly to the third and fourth consideration, which it finds are not satisfied and thus dispositive of the issue. Implying a private right of action for local governments is not necessary to provide an adequate remedy for statutory violations. The Illinois Supreme Court has "implied a private right of action under a statute only in cases where the statute would be ineffective, as a practical matter, unless such an action were implied." *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1119–20 (Ill. 1999) (citing *Abbasi v. Paraskevoulakos,* 718 N.E.2d 181 (Ill. 1999)). *See also Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 546 N.E.2d 580, 600 (Ill. 1989) (Illinois courts will "imply a private remedy where there exists a *clear need* to effectuate the purpose of an act.") (emphasis in original) (citation omitted). But that is not the case here because the CVCL already provides a framework for enforcement—the Attorney General was granted the authority to investigate, penalize, and remedy violations of the CVCL. *See* 220 ILL. COMP. STAT. 5/21-1301. The penalties include significant monetary fines and suspension or

revocation of the holder's State-issued authorization. *Id.* at 1301(e).

Plaintiff, however, takes issue with local governments being left "entirely reliant upon a third-party, the State, to bring an action to enforce their rights" (Doc. 184, p. 42). Plaintiff argues that "if the State fails to bring such an action (as is the case here), there is no available remedy to local governments to address violations of the statute" (*Id.*). In other words, Plaintiff says the statutory remedies are inadequate because the Attorney General has not pursued those remedies in this instance. But Plaintiff's argument is misguided. First, it relies on an assumption that Defendants are, in fact, subject to the CVCL and have violated it. But Defendants vigorously contest that they are subject to the CVCL and the issue is by no means resolved in this Order. Second, the simple fact that the Attorney General has not pursued a lawsuit against video streaming platforms for purported violations of the CVCL does not somehow mean the statutory enforcement framework is an inadequate remedy. "[T]he applicable question . . . is whether the statute provides for a sufficient remedy, not whether a particular person or entity has, in fact, been sanctioned under the statute." *Carmichael v. Pro. Transportation, Inc.*, --- N.E.3d ---, 2021 WL 3925613, at *7) (Ill. App. Ct. 2021), *appeal denied*, 183 N.E.3d 890 (Ill. 2021). Plaintiff's argument implies that if the Attorney General had brought suit against video streaming platforms, then Plaintiff would have no quarrel with the statute's enforcement mechanism. But a local government's disagreement with the State's Attorney as to when it is appropriate to bring suit is not sufficient to show that the statutorily provided remedy is inadequate. *See id.*

Furthermore, implying a private right of action for local governments is not

consistent with the underlying purpose of the CVCL. The statute sought to implement a "state authorization process and uniform standards and procedures" for cable franchising. 220 ILL. COMP. STAT. 5/21-101; Illinois Senate Bill 678, Bill for an Act Concerning Telecommunications, 95th General Assembly, House Proceedings, May 31, 2007, at 233–45. It makes good sense that the legislature would centralize authority to enforce the *state-wide authorization* process administered by a *state agency* with the Attorney General, who is the *state's* chief legal officer, in order to ensure enforcement decisions served the interests of all Illinois consumers (rather than only the varying concerns of individual municipalities). It is does *not* make sense that the legislature would leave enforcement decisions to the whims of any and all of the more than a thousand municipalities in the State of Illinois, as Plaintiff contends.

The Court thus declines to imply a cause of action for Defendants' alleged violations of the CVCL. This decision aligns with courts who have examined similar statutes in other states and all concluded that those laws do not authorize local governments to sue, but rather limit claims to those brought by state enforcement authorities. *City of Reno, Nevada v. Netflix, Inc.*, 558 F. Supp. 3d 991, 997–1000 (D. Nev. 2021) (holding that the Nevada Legislature intended the State via the Office of the Attorney General to enforce actions, remedies, and penalties for violation of the Nevada Video Service Law, not local governments); *City of Ashdown, Arkansas v. Netflix, Inc.*, 565 F. Supp. 3d 1111, 1116–17 (W.D. Ark. 2021) (holding there was no language in the Arkansas Video Service Act that expressly authorized a municipality to bring suit and implying a right of action "would undermine the clear intent of the statute," which was

for "the Arkansas Public Service Commission to ensure compliance."); *City of New Bos., Texas v. Netflix, Inc.*, 565 F. Supp. 3d 865, 869–70 (E.D. Tex. 2021) ("[T]he [Public Utility Commission], through the attorney general, is the body to determine who should be a holder of such a certificate and to enforce compliance if a party improperly fails to file for a certificate. . . . To allow a municipal plaintiff to bypass the [Public Utility Commission] would undermine the regulatory scheme set forth in the statute and its overall purpose to centralize the issuance of franchises in one statewide body."); *City of Lancaster v. Netflix*, No. 21STCV01881, 2021 WL 4470939, at *2–5 (Cal. Superior Ct., Sep. 20, 2021) (holding there was no express authority for a local government to sue a non-franchise holder for non-compliance with the Digital Infrastructure and Video Competition Act of 2006 and refusing to imply a right of action); *Gwinnett County, Georgia v. Netflix, Inc.*, No. 20-A-07909-10, 2022 WL 678784, at *3 (Ga. Superior Ct. Feb. 18, 2022) (holding no express or implied right of action existed for local governments to sue Defendants for alleged violations of Georgia's Consumer Choice for Television Act); *Borough of Longport v. Netflix, Inc.*, No. CV-21-15303-SRC-MAH, 2022 WL 1617740, at *2–3 (D.N.J. May 20, 2022) (same re: New Jersey's Cable Television Act); *City of Kenner v. Netflix, Inc. and Hulu, LLC*, Case No. 814-168 (24th Judicial Dist., Parish of Jefferson, LA Aug. 25, 2022), available at Doc. 201-1 (holding the Louisiana Consumer Choice for Television Act did not confer a right of action on local governments).[10]

---

[10] Additionally, the Ohio Attorney General recently filed an amicus brief in support of the streaming companies in the Ohio Supreme Court. *See* Brief for Ohio Attorney General as Amici Curiae in Support of Petitioners at 11-15, *City of Maple Heights v. Netflix, Inc.*, (Ohio, No. 2021-0864), 2021 WL 5205887. The Attorney General explained that Ohio's Video Service Authorization Law vested the Director of Commerce

In sum, the Court finds that Plaintiff does not have an express or implied right of action under the CVCL to bring this suit against Defendants. Accordingly, Counts 1 and 2 must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. The dismissal is with prejudice because any amendment would be futile given that the CVCL does not provide Plaintiff with a cause of action. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015) (granting motion to dismiss with prejudice and without leave to amend is acceptable when "it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted . . . ." (quoting *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004))).

## B. TRESPASS CLAIM (Count 3)

The complaint alleges that Defendants have committed a trespass by unlawfully entering upon the property of Plaintiff by causing their video content to be delivered to subscribers via wireline facilities located at least partially in public rights-of-way without compensating Plaintiff for their use of the public rights of way (Doc. 167, ¶¶98–103; *see also* Doc. 184, pp. 64–69).

The complaint concedes that Defendants have not and do not install, operate, or maintain any physical infrastructure in the public rights-of-way (*see* Doc. 167, ¶60; *see also* Doc. 184, p. 3 n.2). In other words, Defendants are not the ones putting wires and cables

---

with exclusive enforcement authority; that the creation of an express post-audit dispute right of action cuts against implying other rights of action; and that implying other rights of action for local governments would be inconsistent with the legislature's purpose of creating a uniform regulatory framework. *Id.* at 11–13.

under streets or on poles (*see* Doc. 167, ¶60). Rather, the complaint makes clear that it is the Internet Service Providers ("ISPs") who construct, install, and/or operate the physical infrastructure (*i.e.*, wireline facilities) in the public rights-of-way that provide internet access to customers (Doc. 167, ¶¶35, 39, 47, 52, 60). Defendants' video content is then transmitted across the ISPs' wireline facilities to subscribers (*Id.* at ¶¶35, 39, 47, 58, 102). There are no allegations that the ISPs unlawfully placed their wireline facilities in the public rights-of-way (*see* Doc. 167), and it can be reasonably inferred that the ISPs obtained the requisite authorization and pay the necessary fees to put their wireline facilities in place (*see* Doc. 167, ¶63) (admitting ISPs "do pay service provider fees"). To be clear, Plaintiff is not alleging that the ISPs' wirelines are a trespass; rather Plaintiff is alleging that the transmission of Defendants' video content through the ISPs' wirelines constitutes a trespass.

Under Illinois law, a trespass is committed by entering, or causing a thing or third person to enter, land possessed by someone else without permission, invitation, or other right. *Dial v. City of O'Fallon*, 411 N.E.2d 217, 220 (Ill. 1980); *Schweihs v. Chase Home Fin. LLC*, 187 N.E.3d 1196, 1207 (Ill. App. Ct. 2021) (citing *Benno v. Cent. Lake Cnty. Joint Action Water Agency*, 609 N.E.2d 1056, 1061 (Ill. App. Ct. 1993)). *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1351 (7th Cir. 1995) ("To enter upon another's land without consent is a trespass."). It is "an invasion 'of the exclusive possession and physical condition of land.'" *Colwell Systems, Inc. v. Henson,* 452 N.E.2d 889, 892 (Ill. App. Ct. 1983) (quoting Restatement (Second) of Torts, ch. 7, at 275 (1965)). The plaintiff must also allege "a wrongful interference with his actual possessory rights in the property." *Loftus v.*

*Mingo,* 511 N.E.2d 203, 210 (Ill. App. Ct. 1987); *accord Great Atl. & Pac. Tea Co., Inc. v. LaSalle Nat. Bank,* 395 N.E.2d 1193, 1196 (Ill. App. Ct. 1979). "[T]he intrusion has to be such as to subtract from the owner's use of the property." *Geller v. Brownstone Condominium Assoc.,* 402 N.E.2d 807, 809 (Ill. App. Ct. 1980).

Traditionally, trespass law in Illinois and elsewhere only recognized an *actual physical invasion* by a person or tangible thing.[11] *Chicago & W.I.R. Co. v. Ayres*, 106 Ill. 511, 518 (Ill. 1883) (defining trespass as "an actual physical invasion of the owner's real estate"); *In re Chicago Flood Litig.*, 680 N.E.2d 265, 278 (Ill. 1997) (noting that trespass involves "a crass physical invasion"); Restatement (Second) of Torts, ch. 7, topic 1, scope note (1965) (explaining that the chapter parenthetically titled "Trespass to Land" "deal[s] only with the interest of the possessor in holding his land free from physical intrusions by others[,]" and does not deal with "the invasion of other interests of the possessor of land, such as his interest in its enjoyment free from annoyances other than physical intrusions . . . ."); W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 13, at 71 (1984) ("While it is generally assumed and held that a personal entry is unnecessary for a trespass, the defendant's act must result in an invasion of tangible

---

[11] Courts in some states "have adopted a 'modern' view of trespass that recognizes intangible invasions," such as noise, radiation, or electromagnetic fields, but those courts require the plaintiff to prove physical damage to the property caused by such intangible intrusion. *In re WorldCom, Inc.*, 546 F.3d 211, 217 (2d Cir. 2008) (citing to cases from Colorado, Washington, and Alabama). *See also* 75 Am. Jur. 2d *Trespass* § 29 n.6 (2018) (citing cases from California, Colorado, and Wyoming). In this case, Plaintiff has not alleged the transmission of Defendants' video content caused substantial damage to its property (*see* Doc. 167), meaning that Plaintiff is essentially seeking to apply the modern view to recover for an intangible trespass but without showing that its land was damaged by the alleged invasion. But Plaintiff has not identified a single court of the State of Illinois that has applied the modern view without requiring proof of physical damages to the land (*see* Doc. 184), and the Court did not find any such decision in the course of its own research.

matter. Otherwise, there would be no use or interference with possession."); 75 AM. JUR. 2D *Trespass* § 29 (2018) ("The traditional common law rule, the dimensional test, provides that a trespass only exists where the invasion of land occurs through a physical, tangible object, and under that rule, intangible matter or energy, such as smoke, noise, light, and vibration, are insufficient to constitute a trespass."); 6 TURNER W. BRANCH & MARGARET MOSES BRANCH, LITIGATING TORT CASES § 67:6 (2021) ("A claim of trespass contemplates actual physical entry or invasion.").

Here, the complaint fails to allege facts demonstrating that Defendants caused a physical intrusion, or that the purported physical intrusion interfered with Plaintiff's possession of the rights-of-way. As Defendants stated, video content transmitted through the Internet "is incapable of taking up any physical space that could conceivably interfere with Plaintiff's exclusive possession of the public right-of-way, alter the physical condition of the public right-of-way, or somehow subtract from [Plaintiff's] use of the public right-of-way." (Doc. 175, p. 25; *see also* Doc. 179, p. 46). It is the ISPs' wirelines that are the actual physical intrusion. The internet content that travels through the wirelines has no physical presence. *See Brannan v. Am. Tel. & Tel. Co.*, 362 S.W.2d 236, 241 (Tenn. 1962) (finding that sending radio signals does not amount to an actionable trespass because "[n]o harm is done nor interference with the use of the land created"); *In re MCI, Inc.*, No. 02-13533, 2006 WL 538556, at *4 (Bankr. S.D.N.Y. Feb. 1, 2006) ("'Pulses of light' [through a fiber optic cable] are nothing more than energy radiation of specific frequencies, like radio waves, x-rays, and UHF transmissions, and considering such an energy radiation 'physical' for purposes of trespass law would be inappropriate."). *See*

*also City of Chicago v. F.C.C.*, 199 F.3d 424, 433 (7th Cir. 1999) (upholding FCC's conclusion that ECI was not "using" the public right-of-way to deliver cable television and therefore was not subject to local franchise requirements because even though ECI's signal was transmitted on lines located in the public right-of-way, the lines were previously constructed, owned, and operated by Ameritech, ECI paid Ameritech for use of the lines, and the lines were also available for use by other programmers); *Guidry Cablevision/Simul Vision Cable Sys. v. City of Ballwin*, 117 F.3d 383, 386 (8th Cir. 1997) (citing *In re Definition of a Cable Television Sys.*, 5 FCC Rcd. 7638, 7642 (1990)) ("use" of a public right-of-way does not include "the mere passing over of such a right-of-way by electromagnetic radiation," like radio or infrared waves; *Primeco Pers. Commc'n v. Ill. Commerce Comm'n*, 750 N.E.2d 202, 216 (Ill. 2001) ("the phrase 'use of the public right of way' refers to the physical occupation of those rights-of-way by a telecommunication provider's infrastructure.").

Plaintiff attempts to counter Defendants' argument that there was no physical intrusion by arguing that the Illinois appellate court's decision in *Labell v. City of Chicago* "proves that the Defendants are transmitting a 'thing' because it can be taxed" (Doc. 184, p. 69). *Labell v. City of Chicago*, 147 N.E.3d 732 (Ill. App. Ct. 2019), *petition for leave to appeal denied*, 144 N.E.3d 1175 (Ill. 2020). In *Labell*, taxpayers brought a class action against the City of Chicago challenging the constitutionality of an ordinance imposing an "amusement tax" as it related to internet based streaming services (including Netflix, Hulu, Spotify, and Amazon Prime) delivered to customers with a Chicago address. 147 N.E.3d at 737–38. The Illinois appellate court upheld the amusement tax as constitutional. *Id.* at 747, 749. According to Plaintiff, the holding in *Labell* means that "[a]s a matter of

Illinois law, video streaming service is a 'thing,' which has entered upon, and burdened, the City's public rights-of-way without authorization" (Doc. 184, p. 69).

The Court finds that Plaintiff's reliance on *Labell* is misplaced. The City of Chicago imposed an amusement tax on "charges paid for the privilege of watching electronically delivered television shows, movies, or videos . . . if the shows, movies, or videos are delivered to a patron in the City." *Labell*, 147 N.E.3d at 736. In other words, the "thing" being taxed was the patrons' purchase of or subscription to online shows, movies, or videos. It was not the actual electronic transmission of the online video content that was being taxed. But even if the electronic transmission was the "thing" being taxed, that does not somehow make the transmission a tangible thing capable of physically invading and occupying Plaintiff's land and serving as the basis for a trespass claim. Plaintiff's position, taken to its logical extension, means that every website, online service, and user that provides any type of content on the internet is liable for trespass unless they all obtained explicit permission to do so from Plaintiff and every other municipality (Doc. 175, p. 25). This, of course, is an absurd result and underscores the critical flaw in Plaintiff's trespass theory and why it cannot stand.

For these reasons, Plaintiff's claim for trespass in Count 3 is dismissed pursuant to Rule 12(b)(6) for failure to state a claim. The dismissal is with prejudice because any amendment would be futile given the lack of authority in Illinois allowing claims for intangible trespass that did not cause physical damage to the land.

## C.  UNJUST ENRICHMENT CLAIM (Count 4)

Plaintiff concedes that its unjust enrichment claim is tied to its trespass claim (Doc.

184, pp. 69–70). Because the Court has determined that the trespass claim must be dismissed, so too must the unjust enrichment claim.

**D.  VIOLATION OF EAST ST. LOUIS ORDINANCE § 82-19 (Count 5)**

The complaint alleges that Defendants violated East St. Louis Municipal Code § 82-19,[12] (Doc. 167, ¶¶112–27), which is titled "Unlawful resale of cable service" and provides that "[n]o person shall resell cable communication signals or service within the city without, prior to such sale, having obtained written consent and approval of both the operating franchise company and the city." EAST ST. LOUIS, ILL., CODE OF ORDINANCES §82-19 (1983). As Defendants point out, it appears this ordinance was enacted in 1983 to address the theft of cable service, which was a widely recognized problem in the late 1970s and early 1980s (Doc. 179, p. 47). *See* H.R. Rep. No. 98-934, at *83 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4720 ("The Committee is extremely concerned with a problem which is increasingly plaguing the cable industry—the theft of cable service."); 1 DANIEL L. BRENNER ET AL., CABLE TELEVISION AND OTHER NONBROADCAST VIDEO § 5:82 (2022) (indicating theft of service in the cable industry was a problem in the 1980s, estimated to cost cable companies over $500 million a year in 1984).

Defendants once again set forth an array of arguments as to why this claim must fail. The Court will address the arguments that the Municipal Code does not provide Plaintiff with an express or implied right of action and that Plaintiff has not sufficiently alleged Defendants are "reselling" cable television service, each of which are dispositive.

---

[12]  A copy of the ordinance is attached to the complaint at Doc. 167-1.

"Like a statute, a municipal ordinance may *expressly* provide for a cause of action to redress a violation of its provisions[.]" *1541 N. Bosworth Condo. Ass'n v. Hanna Architects, Inc.*, ---N.E.3d---, 2021 WL 6135459, *6 (Ill. App. Ct. 2021), *appeal denied*, 187 N.E.3d 704 (Ill. 2022) (emphasis in original). An ordinance can also serve as the basis for an *implied* cause of action. *Id.*

Plaintiff completely failed to counter Defendants' argument that no right of action exists to remedy a code violation (*see* Doc. 184). After reviewing the East St. Louis Municipal Code, the Court agrees with Defendants that §82-19 does not provide an express right of action to remedy a violation. The article (Article 1) and chapter (Chapter 82) in which §82-19 appears also do not provide an express right of action. Nor does the part of the Code dedicated to enforcement. *See* EAST ST. LOUIS, ILL., CODE OF ORDINANCES §§ 2-251 to 2-261. Instead, the Code provides that a violation of §82-19 is punishable as a misdemeanor with a fine and imprisonment, *see id.* at § 1-15, by the "Regulatory Affairs Court," which was established by the Code for "administrative adjudication of violations." *Id.* at §§ 2-241 to 2-261.

The Court also believes it is not necessary to imply a right of action under §82-19. First and foremost, Plaintiff's allegations are insufficient to plausibly suggest that Defendants even violated the ordinance. Plaintiff appears to be alleging that Defendants' use of private peering agreements with the ISPs somehow leads to Defendants "reselling" cable in violation of §82-19 (*see* Doc. 167, ¶¶113–24). But the allegations in the complaint make no connection between such agreements and Defendants' alleged "resale" of video content (*see* Doc. 167). And Plaintiff's response in opposition to the motions to dismiss

failed to address Defendants' argument regarding the insufficiency of the allegations (*see* Doc. 184). Consequently, the Court (and Defendants for that matter) are still completely in the dark as to why Plaintiff thinks Defendants resold video content or how the purported resale scheme actually worked (including, for example, who Defendants bought the video content from, who they allegedly resold it to, or who Defendants needed to obtain consent and approval from as required by § 82-19). "The absence of a violation of a statute (or ordinance) is a death knell for a claim of an implied cause of action" because "[t]he only reason to even consider implying a private right of action in . . . [an] ordinance is to redress a *violation* of that [ordinance]." *1541 N. Bosworth*, 2021 WL 6135459, *8.

Additionally, even if Plaintiff had sufficiently alleged that Defendants violated §82-19, the Court finds that the fourth factor for implying a right of action—the need to provide an adequate remedy for violations of the ordinance—is not satisfied. As previously mentioned, the Code establishes a framework for administrative enforcement and remediation of ordinance violations by the Regulatory Affairs Court. Plaintiff does not argue that this enforcement scheme is somehow inadequate to deter violations of §82-19 (*see* Doc. 184). Because the Code provides an adequate remedy and enforcement process for ordinance violations, the Court declines to recognize an implied right of action. *E.g., 1541 N. Bosworth*, 2021 WL 6135459, *10; (no implied right of action where city "*does* have an enforcement method to redress" ordinance violation) (emphasis in original); *Norwood v. City of Chicago*, No. 18-CV-7270, 2020 WL 5076687, at *2 (N.D. Ill. Aug. 27, 2020) (no right of action because "implying a private cause of action for

employees to sue the City is not necessary to provide an adequate remedy for violations" of the ordinance).

For these reasons, Plaintiff's claim in Count 5 is dismissed pursuant to Rule 12(b)(6) for failure to state a claim. The dismissal is with prejudice because any amendment would be futile given that the Code of Ordinances does not provide Plaintiff with a cause of action.

C<small>ONCLUSION</small>

The Motions to Dismiss filed by Defendants (Docs. 172, 173, 174, 176, 178) are **GRANTED** and Plaintiff's Amended Class Action Complaint (Doc. 167) is **DISMISSED** in its entirety **with prejudice** for the reasons stated in the body of this Order.

**IT IS SO ORDERED.**

**DATED: September 23, 2022**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**